## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

ELEK DAVIDSON,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
TYLER FASHEMPOUR,
JOSEPH STADLER,
TYLER DANIELSON, and
CLYDE CARMODY,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

      Plaintiff, Elek Davidson, by and through his attorneys of the Civil Rights Litigation Group, hereby submits this Complaint and Jury Demand, and alleges as follows:

### INTRODUCTION

      1.      This is a civil rights case seeking damages for the unlawful search, prolonged detention, and arrest of a black man, which began with a questionable "routine" traffic stop, and which evolved into arbitrary and capricious harassment that appears to be condoned by the City of Denver.

      2.      Denver Police Officers pulled over Elek Davidson's vehicle for allegedly failing to properly display his front license plate, despite him having clearly displayed the plate that had fallen off the front bumper of his vehicle in the front windshield. Defendants Fashempour and Carmody initiated the traffic stop and were soon joined by two other patrol vehicles with four additional officers, resulting in six police officers, who surrounded the vehicle, cornered and questioned his young child,

and rifled through his vehicle, his person, and his belongings. Defendants knew from a background check of Mr. Davidson that he did not have any outstanding warrants, pending criminal charges, or restraining orders. Defendants had no reason to do anything more than give him a ticket. Despite confirming this information, Defendant Carmody ordered Mr. Davidson to exit his vehicle and conducted a pat-down search, with Defendant Fashempour telling Mr. Davidson that pat-down searches were "standard procedure" for traffic stops. The officers handcuffed Mr. Davidson and placed him in the back of a patrol vehicle while three different officers (Fashempour, Stadler, and Danielson) conducted a thorough search of Mr. Davidson's vehicle. None of these searches were supported by a reasonable belief that he was armed and dangerous, nor did they have probable cause that evidence of a crime would be found in his vehicle. It was a mere fishing expedition, and the officers found no evidence of a crime during their searches.

3.      Based on comments from the officers and prior similar incidents, Defendant Denver appears to have an unconstitutional policy, practice, or custom permitting its officers to conduct pat-down searches and vehicles searches as "standard procedure" during traffic stops. Denver's failure to train and supervise its officers on the correct standard (and to avoid harassing people during extended stops, detentions, and arrests) has resulted in repeated Fourth Amendment violations. Denver's failure to correct these deficiencies was a moving force behind the constitutional violations.

4.      Mr. Davidson seeks to hold the defendants accountable for their unconstitutional searches and unreasonable invasion of his privacy. As a result of this experience, Mr. Davidson suffered lost liberty, emotional harm, and dignitary harm. In addition to compensatory damages, Mr. Davidson seeks punitive damages against the individual officers to punish and deter the blatant abuse of authority and violation of his constitutional rights.

**JURISDICTION AND VENUE**

5.     Plaintiff's federal claims are brought pursuant to 42 U.S.C. §1983 and the Constitution of the United States.

6.     Plaintiff's state law claims are brought pursuant to C.R.S. § 13-21-131 and the Colorado Constitution.

7.     This Court has subject matter jurisdiction of the federal claims pursuant to 28 U.S.C. §1331.

8.     This Court has supplemental subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because all the events alleged herein occurred in the State of Colorado.

10.     Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. §1988 and C.R.S. § 13-21-131(3).

**PARTIES**

11.     Plaintiff Elek Davidson was at all times relevant to the claims set forth herein a resident of the State of Colorado.

12.     Defendant City and County of Denver ("the City" or "Denver") is a Colorado municipality, established under the laws of Colorado. Denver is responsible for the policies, practices, training, supervision, and final decision-making of the Denver Police Department and its officers. Denver was, at all times relevant to the subject matter of this Complaint, the employer of Defendants Fashempour, Danielson, Stadler, and Carmody.

13.     Defendant Tyler Fashempour was, at all times relevant to the claims in this action, employed as a police officer by the Denver Police Department, and acted under color of state law. He is identified in his individual capacity.

14.     Defendant Tyler Danielson was, at all times relevant to the claims in this action, employed as a police officer by the Denver Police Department, and acted under color of state law. He is identified in his individual capacity.

15.     Defendant Joseph Stadler was, at all times relevant to the claims in this action, employed as a police officer by the Denver Police Department, and acted under color of state law. He is identified in his individual capacity.

16.     Defendant Clyde Carmody was, at all times relevant to the claims in this action, employed as a police officer by the Denver Police Department, and acted under color of state law. She is identified in her individual capacity.

## FACTUAL BACKGROUND

17.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding Paragraphs of the Complaint.

18.     On September 6, 2023, Mr. Davidson was driving home with his six-year-old son.

19.     Mr. Davidson and his son are both Black.

20.     On the way home, at approximately 6:45 p.m., Defendants Fashempour and Carmody initiated a traffic stop of Mr. Davidson's vehicle due to him allegedly not having a front license plate.

21.     The front license plate had fallen off the front bumper, and due to the unusual circumstances, was displayed in the front windshield.

22.     The rear license plate was valid and properly attached to the rear bumper and contained information regarding a valid registration and vehicle information.

4

**23.**    Defendant Carmody approached the driver's side of the vehicle, and Defendant Fashempour approached the passenger side.

**24.**    Defendant Carmody asked Mr. Davidson for his license, insurance, and registration, and asked whether the vehicle belonged to him.

**25.**    Mr. Davidson confirmed ownership of the vehicle and handed Defendant Carmody his license, insurance, and registration.

**26.**    Defendant Carmody reviewed Mr. Davidson's documents and returned to his patrol vehicle to run a background check on Mr. Davidson.

**27.**    Mr. Davidson's background check revealed that he had no warrants, pending criminal charges, or restraining orders.

**28.**    While running Mr. Davidson's background, at least two other police vehicles joined the traffic stop, adding Defendants Stadler and Danielson to the officers on scene, along with two other officers.

**29.**    When the officers returned to Mr. Davidson's vehicle, Defendant Carmody reached through the driver-side window to unlock the driver-side door and told Mr. Davidson to exit the vehicle.

**30.**    Defendant Carmody told Mr. Davidson, "You're not in trouble or nothing like that."

**31.**    When Mr. Davidson asked why he needed to exit, Defendant Carmody grabbed Mr. Davidson's left hand, pulled him out of the car, and held both of Mr. Davidson's hands behind his back with force, while Defendant Carmody conducted a pat-down search of Mr. Davidson.

**32.**    Defendant Carmody told Mr. Davidson that he needed to talk to him behind the vehicle, but needed to do a "pat-down" first.

**33.**     Mr. Davidson told the officers that he did not consent to a search of his person or vehicle, but he calmly complied with Defendant Carmody's order and exited the vehicle.

**34.**     Mr. Davidson asked Defendant Carmody again for the reason for the pat-down search.

**35.**     Defendant Carmody said, "I'll explain it to you when we come back here."

**36.**     Defendant Fashempour told Mr. Davidson that pat-down searches were "standard procedure" for traffic stops.

**37.**     At this time, none of the officers had probable cause of a crime, nor did they have any information suggesting Mr. Davidson was armed and dangerous.

**38.**     After Defendant Carmody found nothing from the pat-down search, he walked Mr. Davidson to the patrol car while still holding Mr. Davidson's hands behind his back.

**39.**     While Defendant Carmody kept Mr. Davidson in custody, Defendant Fashempour conducted a search of Mr. Davidson's vehicle.

**40.**     Defendant Fashempour used his flashlight to search in the door compartments, under the seats, and in the center console.

**41.**     Exercising his Fourth Amendment rights, Mr. Davidson calmly told the officers, "Sir, please stop searching my car." He repeated this statement multiple times to ensure the officers knew he did not consent to the search.

**42.**     In response, Defendant Carmody waived his hand at Mr. Davidson and told him to "stop" and "have a seat."

**43.**     Immediately after telling the officers to stop searching his car, Defendants Carmody and Fashempour handcuffed Mr. Davidson.

**44.**     Mr. Davidson asked why he was being handcuffed but received no response.

**45.**     Mr. Davidson complied with all of the officers' orders.

46.    While handcuffed, Defendant Fashempour walked Mr. Davidson to the backseat of the patrol vehicle, ordered him to sit inside the patrol vehicle, and closed the door.

47.    While Mr. Davidson was in the back seat of the patrol vehicle, and without any justification, Defendant Stadler opened the back door of Mr. Davidson's vehicle, picked up a backpack, opened it, and searched it.

48.    Defendant Stadler found no evidence of any crime in the backpack.

49.    Additionally, while Mr. Davidson was in the backseat of the patrol vehicle, and without any justification, Defendant Danielson opened the front passenger door and began searching Mr. Davidson's vehicle.

50.    Defendant Danielson used his flashlight to search the glove box, under the seats, and in the center console.

51.    While searching the center console, Defendant removed receipts and other papers to fully search the center console.

52.    Defendant Danielson proceeded to open all four doors of Mr. Davidson's vehicle to continue searching the rest of the vehicle. Defendant Danielson searched all of the compartments and under all of the seats.

53.    Defendant Danielson found no evidence of any crime in the vehicle.

54.    After Defendants Fashempour, Stadler, and Danielson completed their searches of Mr. Davidson's vehicle, Mr. Davidson was allowed to exit the patrol vehicle.

55.    Defendants removed the handcuffs, and Defendant Fashempour issued Mr. Davidson a summons for improperly displayed license plates, which is a civil infraction.

56.    Mr. Davidson was then allowed to enter his vehicle and leave the traffic stop.

57.    The traffic stop lasted for approximately twenty minutes and involved six Denver Police Officers.

58.    On April 19, 2024, the state court granted the prosecutor's motion to dismiss the summons against Mr. Davidson.

### *Denver's History of Unconstitutional Searches*

59.    Unfortunately, the incident with Mr. Davidson was not an isolated occurrence.

60.    In early 2020, Denver Police Officers claimed to have observed Tyrell Braxton sell drugs to another person outside a convenience store. Two officers approached Mr. Braxton, removed his backpack, and handcuffed him. The officers found cash and narcotics on Mr. Braxton's person during the search incident to arrest. Mr. Braxton's girlfriend was on scene and asked if she could take the backpack with her, and Mr. Braxton instructed the officers to give her the backpack. After denying her request, one of the officers placed the backpack on the hood of his patrol car and searched it, which revealed a loaded gun. After the arrest, Mr. Braxton moved to suppress evidence of the gun because the search of the backpack violated his Fourth Amendment rights. The district court denied his motion, but the Tenth Circuit reversed and suppressed all evidence of the backpack search because the search violated the Fourth Amendment. *United States v. Braxton*, 61 F.4th 830, 839 (10th Cir. 2023).

61.    In 2020, two Denver Police Officers observed a juvenile (known as J.D.L.) jaywalking and conducted an investigatory detention. The officers asked if he had any weapons, which he denied, and proceeded to conduct a pat-down search of J.D.L. From the pat-down search, the officers found a small bag of what appeared to be cocaine. The Colorado Court of Appeals held the search violated the Fourth Amendment and suppressed the evidence found from the pat-down search because the officers lacked reasonable articulable suspicion that J.D.L. was armed and dangerous. *People in Int. of J.D.L.*, No. 20CA1138 (Colo. App. Dec. 16, 2021).

62.    On April 27, 2020, Keilon Hill got into a minor traffic accident while driving home on I-25. Mr. Hill called 911 to report the incident, and three Denver police officers arrived on scene. While Mr. Hill was being checked for injuries, a Denver police officer opened the driver-side door of Mr. Hill's vehicle and began searching the vehicle. The officer had no reason to suspect Mr. Hill of any crime, and there was no justification to search Mr. Hill's vehicle. When Mr. Hill objected to the search of his vehicle, officers handcuffed him and put him in the back of their patrol vehicle. After the incident, Mr. Hill sued the City of Denver and the officers involved, alleging unlawful search and arrest. *Hill v. City and Cnty. of Denver*, 1:22-c-00313-RM-NYW (D. Colo.). The case settled for $100,000 in July of 2022, and the officers involved were never disciplined.

63.    On August 1, 2023, Denver police officers observed Curron Jones exit a home with a person the officers were surveilling for purposes of an arrest warrant. The officers observed Mr. Jones wearing a backpack, and one of the officers grabbed Mr. Jones and placed him in handcuffs for "safety reasons." Mr. Jones was not the subject of the officers' surveillance and had no active warrants. The officers had no reason to believe that Mr. Jones was engaged in any criminal activity at that time. The officers led Mr. Jones to a patrol car, where they re-handcuffed him with his backpack off. While handcuffed and held at the patrol car, the officers told Mr. Jones that they "[weren't] even worried about [him] right now," and that he was "just being detained." One of the officers placed the backpack on the hood of a police vehicle approximately fifteen feet away from where Mr. Jones remained handcuffed and flanked by several Denver police officers. Another officer conducted a pat-down search of Mr. Jones and then placed him in the back of a police car. The officers searched Mr. Jones' backpack, without a warrant or consent, and found a handgun. Mr. Jones was arrested for unlawfully possessing a firearm. During the criminal prosecution, Mr. Jones moved under the Fourth Amendment to suppress all evidence obtained during his encounter with police. At an evidentiary

hearing, an officer testified that it is standard Denver Police Department procedure to "do a protective sweep" prior to giving back a released detainee's possessions. The court granted his request and suppressed all evidence related to the search, holding that "the search of Mr. Jones's backpack violated his Fourth Amendment rights." *United States v. Jones*, No. 23-CR-00375-NYW-2, 2024 WL 1771270, at *7 (D. Colo. Apr. 24, 2024).

64.     The common thread through all of these incidents – Davidson, J.D.L., Braxton, Hill, and Jones – is that Denver Police Officers have a standard practice (expressly admitted by the officers involved with Davidson and Jones) to search every person and all property during any investigative detention or arrest. Denver officers conduct these pat-down searches as a matter of course, without any consideration as to whether they have reasonable suspicion that the person is armed and dangerous.

65.     Additionally, Denver officers conduct vehicle searches as a matter of course, regardless of whether they have consent, a warrant, reasonable suspicion that a person in the vehicle is armed and dangerous, or probable cause to believe there is evidence of the crime for which the officers are investigating.

66.     Denver's standard practice of unjustified searches flouts the well-established law limiting an officer's authority to conduct searches of persons and their personal possessions. Based on these repeated occurrences, Denver clearly has an unconstitutional policy or custom, and/or it failed to train and supervise its officers on these issues.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983, Fourth Amendment & C.R.S. § 13-21-131, Article II §7
### *Unlawful Search of Mr. Davidson*
### (Defendants Fashempour and Carmody)

67.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

68.     Defendants Carmody and Fashempour initiated a traffic stop of Mr. Davidson's vehicle due to him allegedly failing to properly display his license plates.

69.     Such offense is, at worst, a civil infraction and not an arrestable criminal offense.

70.     Defendants Carmody and Fashempour conducted a background check for Mr. Davidson, which revealed that he had no outstanding warrants, pending criminal charges, or restraining orders.

71.     After obtaining the results of the background check, Defendant Carmody put his arm through Mr. Davidson's driver-side window to unlock the door and ordered Mr. Davidson to exit the vehicle.

72.     Mr. Davidson complied, and Defendant Carmody grabbed Mr. Davidson's arms and put his hands behind his back.

73.     Defendants Carmody and Fashempour proceeded to conduct a pat-down search of Mr. Davidson.

74.     Mr. Davidson was calm, compliant, and respectful throughout the encounter.

75.     Based on the results of the background check and Defendants' brief interaction with Mr. Davidson up to this point, Defendants had no objective articulable information to believe that Mr. Davidson was armed and dangerous.

76.     The pat-down search did not reveal any weapons or evidence of any crime.

77.     Due to this incident, Mr. Davidson was subjected to an unreasonable restriction of his liberty, intrusions into his personal effects, and is reasonably afraid of being subjected to a pat-down search during every traffic stop with Denver Police Officers, especially because this traffic stop involved a large show of force, with three patrol vehicles and six Denver Police Officers. Moreover, the actions and the presence of his young son during this traffic stop caused him emotional distress regarding his son's perception of his father and the role of police officers in the community.

78.     The actions of Defendants Fashempour and Carmody proximately caused Mr. Davidson's damages, including lost liberty, emotional harms, and dignitary harms.

79.     The actions of Defendants Fashempour and Carmody, while acting under color of state law, deprived Mr. Davidson of the rights, privileges, and liberties secured by the Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution, including the right to be free from unreasonable searches.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983, Fourth Amendment & C.R.S. § 13-21-131, Article II §7
### *Unlawful Search of Vehicle*
### (Defendants Carmody, Fashempour, Stadler, and Danielson)

80.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

81.     Despite the low-level nature of the traffic stop, the clear background check, and the unfruitful pat-down search, Defendants Carmody and Fashempour walked Mr. Davidson to their patrol car with Mr. Davidson's hands behind his back.

82.     Defendant Fashempour returned to Mr. Davidson's vehicle to conduct a search of the vehicle.

83.     Defendants never asked for consent to search Mr. Davidson's vehicle, nor did he provide them with consent to search his vehicle.

84.     Defendant Fashempour entered Mr. Davidson's vehicle and used his flashlight to look in the compartments, under the seats, and in the center console.

85.     While Defendant Fashempour was searching Mr. Davidson's vehicle, Mr. Davidson repeatedly told him, "Sir, please stop searching my car."

86.     Defendant Fashempour continued searching the vehicle, despite hearing Mr. Davidson telling him to stop.

87.     Defendant Fashempour did not find any evidence relating to the purpose of the traffic stop (i.e., improperly displayed license plates), nor did he find any evidence of any crime.

88.     Defendant Stadler searched the backseat of Mr. Davidson's vehicle and found a backpack. Defendant Stadler opened the backpack and searched the inside of it. Defendant Stadler did not find any evidence of a crime in the backpack.

89.     Defendant Danielson opened all four doors of Mr. Davidson's vehicle and conducted a thorough search. Defendant Danielson searched the glove box, under all the seats, inside each of the compartments, and inside the center console. Defendant Danielson removed several receipts and papers from the center console to complete his search.

90.     Defendant Danielson did not find any evidence relating to the purpose of the traffic stop, nor did he find any evidence of any crime.

91.     Defendants had no warrant authorizing entry into Mr. Davidson's vehicle.

92.     Defendants did not have probable cause that evidence of improperly displayed license plates would be located in Mr. Davidson's vehicle. The license plates were either properly displayed

or they were not. Defendants could not have reasonably expected to find evidence of this traffic infraction in the compartments, under the seats, or in the center console of Mr. Davidson's vehicle.

93.    Due to this incident, Mr. Davidson is reasonably afraid of having his vehicle searched during every traffic stop with Denver Police Officers, especially because this traffic stop involved a large show of force, with three patrol vehicles and six Denver Police Officers. Moreover, the presence of his young son during this traffic stop caused him emotional distress regarding his son's perception of his father and the role of police officers in the community.

94.    The actions of Defendants Fashempour, Stadler, and Danielson proximately caused Mr. Davidson's damages, including lost liberty, emotional harms, and dignitary harms.

95.    The actions of Defendants Fashempour, Stadler, and Danielson, while acting under color of state law, deprived Mr. Davidson of the rights, privileges, and liberties secured by the Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution, including the right to be free from unreasonable searches.

### THIRD CLAIM FOR RELIEF
**42 U.S.C. § 1983, Fourth Amendment & C.R.S. § 13-21-131, Article II §7**
*Unlawful Prolonged Detention and Arrest*
**(Defendants Fashempour and Carmody)**

96.    Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

97.    Under Colorado law, an improperly displayed license plate is a Class B traffic infraction. It is a civil matter, not an arrestable offense.

98.    When Defendants initiated the traffic stop of Mr. Davidson, they had no information suggesting Mr. Davidson committed anything other than a civil infraction (i.e., improperly displayed license plates).

99.     Defendants Fashempour and Carmody learned from the background check that Mr. Davidson did not have any outstanding warrants, pending criminal charges, or restraining orders.

100.    Immediately after Defendant Fashempour began searching Mr. Davidson's vehicle, Mr. Davidson repeatedly stated, "Sir, please stop searching my car."

101.    Defendant Fashempour heard Mr. Davidson tell him to stop searching the vehicle.

102.    Immediately after Mr. Davidson told the officers that they could not search his vehicle, Defendant Carmody waived his hand at Mr. Davidson and told him to "stop" and "sit down."

103.    Then, Defendant Fashempour approached Mr. Davidson and, with the assistance of Defendant Carmody, handcuffed Mr. Davidson.

104.    Defendants Fashempour and Carmody walked Mr. Davidson to the patrol car, opened the door, ordered him to sit inside, and closed the door.

105.    When Defendants handcuffed Mr. Davidson, they did not have probable cause of any crime, nor did they have a reasonable belief that Mr. Davidson was armed and dangerous because they had already conducted a pat-down search of him.

106.    When Defendants ordered Mr. Davidson to sit in the back of the patrol vehicle, they did not have probable cause of any crime, nor did they have a reasonable belief that Mr. Davidson was armed and dangerous.

107.    By handcuffing Mr. Davidson and ordering him to sit in the back of the patrol vehicle, Defendants Fashempour and Carmody arrested Mr. Davidson.

108.    Mr. Davidson remained handcuffed in the back of the patrol vehicle for approximately fifteen minutes.

109.    The actions of Defendants Fashempour and Carmody proximately caused Mr. Davidson's injuries, including lost liberty, emotional harms, and dignitary harms.

110.    The actions of Defendants Fashempour and Carmody, while acting under color of state law, deprived Mr. Davidson of the rights, privileges, and liberties secured by the Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution, including the right to be free from unreasonable seizures.

### FOURTH CLAIM FOR RELIEF
**42 U.S.C. § 1983, Fourth Amendment**
*Monell – Unconstitutional Policy, Practice, or Custom*
*Monell – Failure to Train & Supervise*
**(Defendant City & County of Denver)**

111.    Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

112.    For at least the past several years, Defendant Denver has allowed its officers to conduct pat-down searches of any person for any reason and/or without justification. The cases discussed herein (i.e., J.D.L., Braxton, Hill, and Jones) establish a pattern and practice of this unconstitutional conduct.

113.    Based on the presence of at least six Denver Police Officers at the scene of Mr. Davidson's traffic stop, along with the prior cases involving similar unconstitutional conduct, it is apparent that the City and County of Denver does not train and/or supervise its officers regarding pat-down searches and vehicle searches.

114.    Multiple Denver Police Officers, including Defendant Fashempour, have stated that pat-down searches and vehicle searches are "standard procedure" for traffic stops.

115.    Defendant Denver failed to train and supervise its officers that a pat-down search of a person requires consent or a reasonable belief that the suspect is armed and dangerous.

116.    Defendant Denver failed to train and supervise its officers that a vehicle search requires consent, a warrant, or probable cause that there is evidence of a crime in the vehicle.

16

117.    Defendant Denver failed to train and supervise its officers that reasonable suspicion requires an objective articulable belief of criminal activity, and that inchoate hunches are insufficient for officers to conduct searches and handcuff motorists during routine traffic stops.

118.    Based on Denver's pattern and practice of unconstitutional searches, along with deficient training/supervision regarding pat-down searches and vehicle searches, Defendant Denver was a moving force behind the Fourth Amendment violations.

119.    The actions and/or inaction of Defendant Denver proximately caused Mr. Davidson's injuries, including lost liberty, emotional harms, and dignitary harms.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in his favor and against all Defendants for compensatory damages, punitive damages against the individual defendants, interest as allowed by law, costs, expert witness fees, attorney's fees, and for any other relief that this Court deems just and proper.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 16th day of June 2025.

> *s/ Zachary L. Shiffler*
> Zachary L. Shiffler
> Raymond K. Bryant
> Civil Rights Litigation Group
> 1543 Champa St., Ste. #400
> Denver, CO 80202
> T: 720-515-6165
> F: 720-465-1975
> zach@rightslitigation.com
> raymond@rightslitigation.com
> *Attorneys for Plaintiff*